**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF: ) | No. CIV 08-135-TUC-CKJ |
| ) | |
| FIRST MAGNUS FINANCIAL ) | |
| CORPORATION, ) | **AMENDED ORDER** |
| ) | (Amending Caption Case Number Only) |
| Debtor, ) | |
| ) | |
| _____ ) | |
| ) | |
| BINFORD et al., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| vs. ) | |
| ) | |
| FIRST MAGNUS FINANCIAL ) | |
| CORPORATION and FIRST MAGNUS ) | |
| CAPITAL, INC., ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Pending before this Court is Appellant's appeal from the Bankruptcy Court's Orders in Bankr. Case No. 04-bk-01578 (JMM), Adv. No. 07-ap-00060 (JMM) dismissing the adversary proceeding, denying class certification, denying administrative priority status of Appellants' WARN Act claims and dismissing the non-debtor First Magnus Capital, Inc. (FMCI) for lack of jurisdiction.[1]

---

[1] The Court finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2). "The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C).

## I. FACTUAL BACKGROUND

First Magnus was one of the largest privately held mortgage companies in the United States. Headquartered in Tucson, Arizona, First Magnus employed over 5,500 individuals and maintained 335 branches throughout the United States. Its business encompassed originating, purchasing and selling mortgage loans secured by one to four unit residences. As the mortgage industry began suffering the unprecedented liquidity crisis that continues today, First Magnus became unable to secure financing for its continued operations. On August 16, 2007, First Magnus terminated the majority of its 5,500 employees and closed many of its retail and wholesale offices. Subsequently, on August 21, 2007, First Magnus sought the protection of the Bankruptcy Court and filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

Appellants in this cause of action were among the approximately 1,000 similarly situated employees who were terminated by First Magnus on August 16, 2007. None of First Magnus's employees received sixty (60) days advance written notice of their terminations. As a result, on August 29, 2007, Appellants filed a complaint for damages pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.* in the Bankruptcy Court. Appellants amended this complaint the following day, August 30, 2007.

On October 31, 2007, First Magnus filed a motion to dismiss Appellants' complaint in the Bankruptcy Court. The following month, on November 30, 2007, Appellants filed a motion in the Bankruptcy Court seeking class certification of their complaint. This motion was denied by the Bankruptcy Court on January 10, 2008. Appellants timely filed a Notice of Appeal and filed their Motion for Leave to Appeal with this Court on January 22, 2008, seeking an interlocutory appeal of the order denying class certification.

On February 6, 2008, the Bankruptcy Court entered a final order granting First Magnus's Motion to Dismiss Appellants' Adversary Proceeding Complaint and FMCI's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Appellants filed a Notice of

Appeal seeking relief from the final order of the Bankruptcy Court. On March 31, 2008, Appellants filed their Motion on Behalf of Certain Former Employees of Debtor for Allowance and Immediate Payment of Administrative Expense Portion of WARN Act Wages and Benefits Pursuant to 11 U.S.C. § 503(b)(1)(A)(ii). Objections to this motion were filed in the Bankruptcy Court by various interested parties including the debtor, First Magnus. On June 20, 2008, the Bankruptcy Court denied Appellants' administrative expense status motion.

Additionally, FMCI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 19, 2008. On May 29, 2008, FMCI filed its Plan of Reorganization and a Disclosure Statement in support of the plan. FMCI's Disclosure Statement was subsequently amended, and approved by the Bankruptcy Court on July 28, 2008. On September 12, 2008, FMCI submitted its "First Amended Plan of Reorganization Dated September 12, 2008." The Bankruptcy Court entered its order confirming the Amended Plan on September 25, 2008.

On September 26, 2008, this Court entered its Order denying Appellants' Motion for Leave to Appeal regarding the class action certification and granting Appellees' Motion to Dismiss on the grounds that Appellants' arguments were moot as a result of the dismissal of their adversary proceeding in the Bankruptcy Court. Appellants now appeal the Bankruptcy Court's Orders dismissing the adversary proceeding, denying class certification, denying administrative priority status of Appellants' WARN Act claims and dismissing the non-debtor FMCI for lack of jurisdiction.

**II.    STANDARD OF REVIEW**

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a), and reviews the bankruptcy court's findings under the same standard that the court of appeals would review a district court's findings in a civil matter. 28 U.S.C. § 158(c)(2). Therefore, this Court reviews the bankruptcy court's factual findings under a clearly erroneous standard, and

conclusions of law de novo. *In re: Jastrem*, 253 F.3d 438 (9th Cir. 2001); *See also* Fed. R. Bankr. P. 8013.

### III. ANALYSIS

*A. Dismissal of Adversary Proceeding*

Appellants argue that the Bankruptcy Court erred in its dismissal of the Adversary Proceeding pursuant to Rule 41(b), Federal Rules of Civil Procedure. Appellants further assert that the dismissal should be reversed because "a claimant under the WARN Act has the right to file a class action adversary proceeding seeking relief for a class of similarly situated former employees independent of the individual claims process." [Appellants' Opening Br. at 8-9.] This Court "will not reverse unless we have the definite and firm conviction that the [bankruptcy] court committed a clear error of judgment." *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1557 (9th Cir. 1996) (internal quotations and citations omitted).

"Courts are invested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotations and citations omitted). This principle is well established, and allows judges to exercise substantial discretion in controlling their dockets and to manage their cases and courtrooms effectively. *U.S. v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008). Furthermore, bankruptcy courts have "an inherent duty and the power to dismiss a case *sua sponte* to preserve its integrity, to ensure that the legislation administered by the court will accomplish its legislative purpose, or to control its docket." *In re Wells*, 71 B.R. 554, 557 (N.D. Ohio 1987) (citations omitted). This "power is based upon the court's inherent duty to ensure the orderly administration of the debtors' estates." *Id.* As the Bankruptcy Code unequivocally provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any

- 4 -

> determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process.

11 U.S.C. § 105(a). As such, "[t]he bankruptcy court may dismiss cases *sua sponte* where to do so perpetuates the proper use of the bankruptcy mechanism." *In re Ray*, 46 B.R. 424, 426 (S.D. Ga. 1984).

Moreover, "a trial court 'has broad discretion in deciding whether to allow maintenance of a class action.'" *In re First Alliance Mortgage Co.*, 269 F.R. 428, 441 (C.D. Cal. 2001) (quoting 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785, at 119 (2d ed. 1986)). The cases relied on by Appellants universally recognize that an adversary proceeding is duplicative of the normal bankruptcy claims process. Based on the particular facts of those cases, the adversarial process was allowed to proceed. *See In re Protected Vehicles, Inc.*, 392 B.R. 633 (D. S.C. 2008) (finding "under the present circumstances, this adversary proceeding should not be dismissed at least at this early stage." *Id.* at 641.); *In re First NLC Financial Services, LLC*, 2008 WL 3471673 (Bkrtcy. S.D.Fla. 2008) (noting "in this matter the Court finds that resolution of the WARN Act claims will be expedited and handled more efficiently in a class adversary proceeding . . . ." *Id.* at 3.); *In re Quantegy, Inc.* 343 B.R. 689 (M.D. Ala. 2006) (noting "the court is of the opinion that this adversary proceeding should not be dismissed on that ground [duplication of the claims process]." *Id.* at 693.). Further, "the analysis necessarily focuses on the **individual circumstances of the case**." *In re First Alliance Mortgage Co.*, 269 B.R. at 445 (emphasis added).

In the instant case, the Bankruptcy Court additionally relied upon its inherent powers pursuant to 11 U.S.C. § 105 in dismissing the adversary proceeding. Mem. Decision at 3, Feb. 6, 2008. Moreover, based on the circumstances presented below, the Bankruptcy Court found that the adversarial process was duplicative of the normal bankruptcy claims procedure. Order at 1, Jan. 10, 2008. At the time of dismissal of the class action certification, approximately 5300 of the 5500 potential claims had already been filed. *See* Hr'g Tr. on Mot. to Approve Class Cert. at 17:9-18, Jan. 9, 2008. The Bankruptcy Court

1 concluded that the normal bankruptcy claims procedure was adequate to handle the claims of the WARN Act Claimants. The Bankruptcy Court was in the best position to assess the propriety of the normal claims process versus an adversarial proceeding. The high number of claims filed indicates that any concerns regarding persons holding small claims not seeking to prosecute them absent class procedures are unfounded. *See In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989). Moreover, there is no legal prohibition to the Bankruptcy Court's decision. As such, this Court finds that the Bankruptcy Court's decision was not clearly erroneous, and upholds its decision to dismiss the adversarial proceeding in this matter.

*B. Denial of Class Certification*

Because the Court finds that the Bankruptcy Court's dismissal of the adversary proceeding was not in error, it declines to address the Bankruptcy Court's denial of class certification. As noted, *supra*, "a trial court 'has broad discretion in deciding whether to allow maintenance of a class action.'" *In re First Alliance Mortgage Co.*, 269 F.R. at 441 (quotations omitted). Further, Appellants have not cited any legal reason mandating class certification. As such, the Bankruptcy Court's order denying class certification is upheld.

*C. Denial of Administrative Priority Status*

Appellants seek administrative priority status for the WARN Act damages. In doing so, they argue that 11 U.S.C. § 503(b)(1)(A)(ii) authorizes such action. Section 503 states in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate including –
>
> (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
>
> (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations

- 6 -

> Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

11 U.S.C. § 503(b)(1)(A). Since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) in 2005, only two courts have considered the question of WARN Act damages warranting administrative priority status. *See In re First Magnus Financial Corp.*, 390 B.R. 667 (D. Ariz. 2008); *In re Powermate Holding Corp.*, 394 B.R. 765 (D. Del. 2008). Both courts concluded that § 503 does not mandate administrative priority status for WARN damages.

In the instant case, the Bankruptcy Court first looked to the plain meaning of the statute. It is "[t]he cornerstone principle of statutory construction . . . that, 'where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" *In re First Magnus*, 390 B.R. at 675-76 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). Thus, "when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 2594 (1992). Parsing the language of § 503(b)(1)(A), the Bankruptcy Court noted the connector "and" between sections (i) and (ii), correctly concluding that this language "would require that *both* parts of the subsections must exist in order for a claimant to be entitled to an administrative expense." *In re First Magnus*, 390 B.R. at 677. Additionally, "[s]uch an interpretation would be consistent with longstanding law that only debts that arise postpetition can be treated as administrative expenses." *Id.* (citations omitted).

Although the *Powermate* court differed in its reasoning, it too determined that WARN Act damages, such as those claimed by Appellants here, are not entitled to administrative

- 7 -

1   priority status. The *Powermate* court found the conjunction "and" between sections (i) and
2   (ii) to indicate that these are merely "categories within a particular subset of allowable
3   administrative expenses[.]" *In re Powermate*, 394 B.R. at 774. Construing WARN Act
4   damages as a form of severance pay, the court considered when such damages would vest.
5   *Id.* at 776-77. "In terms of priority, a claim for severance pay will only have administrative
6   priority to the extent that it is based on post-petition services." *Id.* at 775. Moreover, "the
7   rights of workers discharged in violation of the WARN Act accrue in their entirety upon their
8   termination." *Id.* at 776. Because the plaintiff was terminated pre-petition, his WARN Act
9   damages vested pre-petition, and therefore were not administrative expense claims. *Id.*
10  Finally, the *Powermate* court declined to view the BAPCPA as a "sea change" to the
11  bankruptcy process. *In re Powermate*, 394 B.R. at 777. Pre-BAPCPA courts "consistently
12  held that WARN Act damages based on pre-petition terminations only received fourth or
13  fifth level priority status. . . . The rationale for these decisions was that administrative
14  expense status could only be extended to wages for *services rendered* post-petition." *Id.* As
15  such, Section 503(b)(1)(A) does not mandate administrative priority status to employees
16  terminated pre-petition.

17       This Court agrees that WARN Act damages should not be awarded administrative
18  priority status. Section 503(b)(1)(A) unequivocally states it applies to "the actual, necessary
19  costs and expenses of preserving the estate." Appellants' WARN damages are not necessary
20  to maintain the debtor as a going concern, nor are they necessary to preserve the bankruptcy
21  estate during the liquidation process. Accepting Appellants' argument would be inconsistent
22  with the meaning and purpose of the bankruptcy framework. "The enormous increase in the
23  value of wage claims if the law is interpreted according to the [Appellants'] view is so
24  extreme that it would effectively cripple the debtors' efforts for an equitable reorganization
25  or liquidation." *In re Powermate*, 394 B.R. at 777. The Bankruptcy Court's thorough and
26  well-reasoned opinion below is affirmed.

27   . . .
28   . . .

*D. Dismissal of First Magnus Capital, Inc. for Lack of Jurisdiction*

Appellants argue that the Bankruptcy Court erred in dismissing the non-debtor FMCI for lack of jurisdiction. Appellants' arguments are based on their assertion that the non-debtor FMCI is the parent company of First Magnus, and as such the two represent a "single employer" for purposes of WARN Act damages. This relationship, Appellants assert, is sufficient to confer "related to" jurisdiction of the Bankruptcy Court over FMCI.

Bankruptcy courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Ninth Circuit described proceedings "arising in" bankruptcy as "core" proceedings and defined them as:

> [P]roceedings that would not exist outside of bankruptcy, such as "matters concerning the administration of the estate," "orders to turn over property of the estate," and "proceedings to determine, avoid, or recover preferences."

*In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (citing 28 U.S.C. § 157(b)(2)). The Ninth Circuit has adopted the "*Pacor* test" for determining the scope of "related to" jurisdiction. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). The Ninth Circuit's adoption defined the *Pacor* test as follows:

> [W]hether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Fietz*, 852 F.2d at 457 (citations omitted).

Appellants rely on a bankruptcy court slip opinion from the Southern District of Florida to establish "related to" jurisdiction. *In re First NLC Financial Services, LLC*, 2008 WL 3471673 (Bkrtcy.S.D.Fla. Aug. 11, 2008). In that case, terminated employees filed a class action adversary complaint against the debtor First NLC and its parent company, Friedman, Billings & Ramsey Group, Inc. (FBR) alleging WARN Act violations. *Id.* at 1. The court denied FBR's motion to dismiss for lack of subject matter jurisdiction because the plaintiffs alleged that First NLC and FBR were a single employer, and because Fifth Circuit precedent conferred "related to" jurisdiction where joint and several liability existed.

- 9 -

1   It is well-established that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (citations omitted). Furthermore, the Ninth Circuit has rejected the argument "that jurisdiction lies because the action could conceivably increase the recovery to the creditors. As the other circuits have noted, such a rationale could endlessly stretch a bankruptcy court's jurisdiction." *In re Pegasus*, 394 F.3d at 1194 n.1 (citations omitted).

Here, the Bankruptcy Court acknowledged that "joint and several liability may arguably exist between FMCI and the Debtor[;]" however, this was "not a legally sufficient nexus to confer otherwise non-existent jurisdiction upon [the] court." Mem. Decision at 2, Feb. 6, 2008. At the time of the Bankruptcy Court's order, the class action had been dismissed, as well as the adversary proceeding. Appellants' claims were moving through the bankruptcy claims process. As such, the Bankruptcy Court properly dismissed Appellants' claims against FMCI for lack of jurisdiction.

Even if Appellants' arguments were correct, the issue before this Court is now moot. As this Court has previously recognized, it is well-established law that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology or California v. U.S.*, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (citations omitted). Moreover, "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Id.* (citations omitted). This constitutional doctrine of    mootness prevents courts from making determinations that would not have any practical affect. *In re: McLean Square Associates, G.P.*, 200 B.R. 128, 131 (E.D. Va. 1996).

Appellants' adversary proceeding has been dismissed by the Bankruptcy Court and a final order entered. This Court upholds that dismissal, as well as the Bankruptcy Court's denial of class certification. Furthermore, FMCI has filed for bankruptcy protection and a plan has been confirmed. Appellants had the opportunity to appear in those proceedings, but elected not to. Thus, if this Court found that the Bankruptcy Court had "related to" subject

- 10 -

matter jurisdiction over FMCI regarding Appellants' WARN Act claims, there is no effectual relief that could be granted. As such, Appellants' claims as to FMCI are moot.

In light of the foregoing, IT IS HEREBY ORDERED that:

1. The Bankruptcy Court's February 6, 2008 Order Dismissing Appellants' Adversary Proceeding is AFFIRMED;

2. The Bankruptcy Court's January 10, 2008 Order Denying Class Certification is AFFIRMED;

3. The Bankruptcy Court's February 6, 2008 Order Granting FMCI's Motion to Dismiss is AFFIRMED;

4. The Bankruptcy Court's June 20, 2008 Order Denying Administrative Claim Status of "WARN Act" Employees is AFFIRMED; and

5. The Clerk of the Court is directed to close its file in this matter.

DATED this 3rd day of April, 2009.

Cindy K. Jorgenson
United States District Judge